Carter v. Lee, No. 295-8-11 Bncv (Hayes, J., Apr. 3, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| SUPERIOR COURT | CIVIL DIVISION |
|---|---|
| Bennington Unit | Docket No. 295-8-11 Bncv |

|  |  |
|---|---|
| James Carter, Jorgine M. Carter<br>Susan Westin, Virginia W. Heath,<br>Henry Heath, Norma Will,<br>Joseph Will, William Corr,<br>Betsy Rudner, Chris Murphy Sargent,<br>John Pitcher, and the First Congregational<br>Church of Manchester, VT, Inc.<br>  Plaintiffs<br><br>  v.<br><br>James Lee, Jr., James Anderson,<br>Anne Ehret, Pamela Nemlich,<br>Betsy Kukacka, John Cave,<br>Marion LaTorella, Claire Merritt<br>Barbara Venvliet, Douglas Velsor,<br>Trudy Myers, Tammy White,<br>Marlyn Couture, and the First<br>Congregational Church of Manchester, VT, Inc.,<br>  Defendants |  |

### DECISION ON MOTIONS TO DISMISS AND/OR FOR SUMMARY JUDGMENT

In this case, the court is faced with an internal dispute that has arisen in the First Congregational Church of Manchester, Vermont. The dispute arose when the church congregation voted on June 27, 2010, to adopt a new governance structure. Specifically, the congregation voted to create a body termed "The Board of Elders" that would act as the governing body of the church. Plaintiffs contend that the creation of such a board violates the church bylaws, which were not amended at the June 27 meeting. Plaintiffs argue that because the existence of the Board of Elders conflicts with the church bylaws, all of the actions the board has taken since its creation have been unauthorized.

On August 12, 2011, Plaintiffs brought this derivative suit against the church and the individual members of the Board of Elders.[1] Plaintiffs make six claims in their verified complaint. First, plaintiffs allege that they were denied access to the church membership list in violation of 11B V.S.A. § 7.20(b). Second, plaintiffs allege that they were denied access to church records in violation of 11B V.S.A. §§ 16.02-03. Third, plaintiffs claim that the Board of Elders has been without authorization to act since its inception, and that all actions it has taken have been invalid. Specifically, plaintiffs object to the following actions: (1) the hiring of a new reverend; (2) the dismissal of the church secretary; (3) the grant of a pension and health care benefits to the church musical director; and (4) the expenditure of money from an endowment fund established by the church bylaws in excess of an established 5% cap. Fourth, plaintiffs claim that because the Board of Elders is unauthorized to spend money on behalf of the church, its actions violated the Uniform Prudent Management of Institutional Funds Act, 14 V.S.A. § 3411 *et seq*. Fifth, plaintiffs allege that defendants failed to give proper notice of an amendment to the church bylaws in violation of 11B V.S.A. § 10.21(d). Sixth and finally, plaintiffs allege that defendants held a Special Meeting on July 31, 2011 without giving proper notice to the church membership as required by 11B V.S.A. § 7.05.

On November 16, 2011, defendants filed the instant motion to dismiss for lack of subject matter jurisdiction, or for summary judgment. Defendants contend the court lacks subject matter jurisdiction because adjudicating the dispute at issue in this case would violate the Establishment Clause by excessively entangling the courts with religion. In the alternative, defendants argue that any unauthorized actions by the Board of Elders were cured by subsequent ratification. Plaintiffs filed a response on December 19, 2011. The court heard oral argument on the motion on March 5, 2012.

---

[1] Plaintiffs have represented that in addition to their derivative claims, plaintiffs also have individual claims against defendants. However, since the verified complaint purports to bring a derivative suit only, the court will treat the suit as such. Although there is some dispute among the parties on the issue of whether the plaintiffs meet the threshold requirements of 11B V.S.A. §6.40(a)(1) to bring a derivative suit, the court assumes that those requirements are met for the purposes of this motion.

DISCUSSION

Judicial restraint demands that this court refrain from reaching the constitutional issue presented in this case unless no adequate alternative ground exists for resolving the dispute. See *State v. Bauder*, 2007 VT 16, ¶ 27, 181 Vt. 392. Therefore, the court first considers defendants' motion for summary judgment, as it is premised on subsequent ratification and does not invoke any constitutional principles.

Defendants argue that even assuming the Board of Elders was created in violation of church bylaws, the congregation voted at a Special Meeting on July 21, 2011 retroactively to ratify the creation of the board, and to authorize all of its actions since its inception. To ratify previously unauthorized acts, a disinterested and fully informed majority of shareholders must vote to authorize the acts retroactively. See 18B Am. Jur. 2d Corporations § 1412 ("A validly accomplished shareholder ratification relates back to cure otherwise unauthorized acts of officers . . . only a disinterested majority of shareholders can accomplish this task.").

At this stage in the litigation, a motion for summary judgment is premature. Generally, a grant of summary judgment at such an early stage in litigation is disfavored. See V.R.C.P. 56(f) (court may refuse to grant summary judgment where nonmoving party can show reasons why essential facts are not available); see also *Doe v. Doe*, 172 Vt. 533, 534-35 (2001) (mem.) (summary judgment was premature when no discovery had occurred). Very little discovery has occurred in this case, and there are ambiguities and disputed facts in the record.[2] Because the motion for summary judgment is premature, the only way forward is to confront the constitutional issue presented in defendants' motion to dismiss.

---

[2] Among these are whether the July 21, 2011 Special Meeting was properly noticed to all members, whether the count of votes in favor of ratification was accurate, and whether a disinterested majority of members voted to ratify the earlier decisions.

The question before the court is whether deciding plaintiffs' claims would involve the court in a church dispute in a manner that would violate the Establishment Clause of the First Amendment to the United States Constitution. See U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion").[3] A government action complies with the Establishment Clause so long as it satisfies each of the three prongs of the so-called *Lemon* test: (1) it must have a secular purpose; (2) its primary effect must not enhance or inhibit religion; and (3) it must not foster an excessive government entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612-613 (1971). In this case, defendants argue that the court must abstain from adjudicating the claims before it because to do so would excessively entangle the courts with religion.

Initially, it should be noted that not all entanglements between the government and the church violate the Establishment Clause. The entanglement must be "excessive" – that is, it must rise above the level of ordinary interaction that is to be expected between the church and state. See *Agostini v. Felton*, 521 U.S. 203, 232 (1997) ("Interaction between church and state is inevitable, and we have always tolerated some level of involvement between the two.") (citation omitted). Of course, whenever a civil court is asked to intervene in an intra-church dispute, "there is substantial danger that the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs." *Serbian E. Orthodox Diocese for the U.S. and Can. v. Milivojevich*, 426 U.S. 696, 709 (1976). The court may only hear cases involving church disputes if they can be resolved without adjudicating religious disagreements, and by applying neutral principles of law, irrespective of religious doctrine. See *Jones v. Wolf*, 443 U.S. 595, 602–04 (1979).

Of the plaintiffs' six claims, to adjudicate four of them would pose little risk for the court to become excessively entangled with religion. Counts I, II, V, and VI do not involve any issues relating to religion. Deciding whether the church deprived plaintiffs of access to certain documents or failed to

_____

[3] The Establishment Clause was made applicable to the states by the Fourteenth Amendment. *Everson v. Bd. of Educ.*, 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947).

properly give notice of various meetings would not foreseeably require the court to hear or consider any evidence relating to religion. The questions to be resolved by the court would be straightforward, and involve the neutral application of Vermont's non-profit corporations' laws. Nothing in the record suggests that the court lacks subject matter jurisdiction to hear Counts I, II, V, and VI on constitutional grounds.

The more potent danger of excessive entanglement lies in the court's adjudication of Counts III and IV. Count III alleges that the Board of Elders was established in contravention of church bylaws, and that as a result, all actions carried out by the board since its creation have been unauthorized and in violation of 11B V.S.A. § 3.03. Count IV alleges that the Board of Elders expended institutional funds when it had no authority to do so, violating the Uniform Prudent Management of Institutional Funds Act, 14 V.S.A. § 3411 *et seq.* Counts III and IV both stem from the change in the church's governance structure that transferred power to the Board of Elders.

Plaintiffs object to the actions of the newly constituted Board of Elders both generally and specifically. Generally, plaintiffs argue that since the Board of Elders was created in contravention of the church bylaws, any action taken by them was unauthorized. Specifically, plaintiffs allege that the Board of Elders undertook the following actions without authorization: (1) to hire Rev. Dr. Gordon McClellan; (2) to dismiss the church secretary; (3) to offer retirement and health care benefits to the church music director; and (4) to expend money from an endowment fund in excess of an established cap in the bylaws.[4] Although plaintiffs list specific unauthorized actions in their complaint, the legal basis for

---

[4] Although plaintiffs identify specific actions taken by the Board of Elders to which they object, there is no suggestion in the record that their objections are religious in nature. Plaintiffs do not argue that the Board of Elders has taken action that runs contrary to the tenets of the church, or that the creation of the board is inconsistent with church doctrine. Indeed, nothing in the record suggests that the dispute before the court involves conflicting interpretations of religious doctrine. If the dispute in this case did involve conflicting religious doctrines, the court could not hear the case without taking and weighing ecclesiastical evidence, thereby excessively entangling itself with religion.

challenging each action is the same:  the Board of Elders has no power under any church governing document to carry out any official actions.

To resolve the issue presented in Counts III and IV of the complaint, this court must determine whether the creation of the Board of Elders in July 2010 resulted in a governance structure inconsistent with the church bylaws.  Although this is a closer question than the issues presented by Counts I, II, V, and VI, the court concludes that resolving that question will not require the court to pass judgment on any of the acts undertaken by the Board of Elders since its creation, or examine the details of each of the board's actions.  The court's resolution of these claims will require only a determination of whether the creation of the board conflicted with the church bylaws, and will not involve an inquiry into the specific acts undertaken by the board since its creation.  Deciding these claims will therefore not run the risk of excessively entangling the court with religion.  An examination of the relevant statutes and governing church documents will reveal the answer, with no need to examine the specific acts undertaken by the board.

Defendants argue that for the court to become involved in an internal dispute over how best to govern a church would excessively entangle the court in religion.  That is not what is required to resolve the issues before the court.  The question the court is asked to answer is not which governance structure is wisest, but rather whether the governance structure created at the July 2010 meeting was permitted by the church bylaws at the time.  The court will not entertain any evidence relating to whether the creation of the Board of Elders was a wise decision, whether the new governance structure is good for the church, or any similar evidence pertaining to the merits of the decision to create the Board of Elders.  Further, the court will not hear evidence regarding whether the Board of Elders made sound policy choices once it was created.  The only question to decide will be whether the bylaws permitted the board to be created at all, and therefore whether the board had authorization to act on behalf of the church.

6

Based on the record before the court, all of plaintiffs' claims involve a straightforward application of Vermont's non-profit corporations' law, and do not require an examination of religious doctrine.  Because it appears that the court can adjudicate each count of the plaintiffs' complaint without considering ecclesiastical evidence, or resolving any religious disagreement, the court has jurisdiction to proceed.

ORDER

For the foregoing reasons, Defendants' Motion to Dismiss or for Summary Judgment (MPR #3), filed December 5, 2011, is ***denied***.

Dated at Bennington, Vermont this 3rd day of April, 2012.

_____
Katherine A. Hayes
Superior Court Judge